| | |
|---|---|
| 1 | Deverie Christensen, Nevada Bar No. 6596 |
| | Deverie.Christensen@jacksonlewis.com |
| 2 | Eric Magnus, *Admitted Pro Hac Vice* |
| | Georgia Bar No. 801405 |
| 3 | **JACKSON LEWIS P.C.** |
| | 3800 Howard Hughes Parkway, Suite 600 |
| 4 | Las Vegas, Nevada 89169 |
| | Tel: (702) 921-2460 |
| 5 | Fax: (702) 921-2461 |
| 6 | *Attorneys for Defendant Southwest Gas Corporation* |
| 7 | Don Springmeyer, Nevada Bar No. 1021 |
| | Bradley S. Schrager, Nevada Bar No. 10217 |
| 8 | **WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP** |
| 9 | 3556 E. Russell Road, Second Floor |
| | Las Vegas, Nevada 89120 |
| 10 | (702) 341-5200/Fax: (702) 341-5300 |
| | dspringmeyer@wrslawyers.com |
| 11 | bschrager@wrslawyers.com |
| 12 | *Local Counsel for Plaintiff* |
| 13 | Jason T. Brown, *Admitted Pro Hac Vice* |
| | Nicholas Conlon, *Admitted Pro Hac Vice* |
| 14 | **BROWN, LLC** |
| | 111 Town Square Place, Suite 400 |
| 15 | Jersey City, NJ 07310 Phone: (201) 630-0000 |
| | jtb@jtblawgroup.com |
| 16 | nicholasconlon@jtblawgroup.com |
| 17 | *Lead Counsel for Plaintiff* |

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EBONY HOWARD, individually, and on behalf of all others similarly situated, | Case No.: 2:18-cv-01035-JAD-VCF |
| Plaintiff, | **JOINT MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT** |
| vs. | |
| SOUTHWEST GAS CORPORATION, | |
| Defendant. | |

Plaintiff EBONY HOWARD ("Plaintiff") and Defendant SOUTHWEST GAS CORPORATION ("Defendant"), by and through their attorneys of record, submit this Motion for Final Approval of Class and Collective Action Settlement. Plaintiff and Defendant collectively referred to throughout this Motion as "the Parties," have reached an agreement to settle Plaintiff's Collective and Class Action lawsuit. On March 11, 2019, the Court granted preliminary approval of the settlement and approved the notice to be sent to Class Members. ECF No. 23. Having completed the notice procedure approved by the Court, the parties now seek final approval of settlement. As previously articulated for the Court in their Motion for Preliminary Approval, Class Counsel believe that the proposed final settlement is fair and adequately compensates the members of the class for the alleged off-the-clock work that they performed.

**I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

Plaintiff is a former hourly non-exempt dispatcher of Defendant. Plaintiff alleges that she and other similarly situated dispatchers were not compensated for all of their hours worked, including but not limited to time spent booting up and logging into and out of Defendant's computer systems before and after their shifts. Plaintiff filed the operative Complaint on June 7, 2018. ECF No. 1 ("Complaint"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, et seq. and Nev. Rev. Stat. Ann. (hereinafter "N.R.S.") §§ 608.016 and 608.018.

The parties engaged in serious settlement discussions before, during and after a private mediation conducted by mediator Scott Markus, Esq. on October 26, 2018. Ultimately, the Parties (both represented by counsel who have litigated numerous wage and hour collective and class actions) agreed to a Class and Collective Action Settlement under which Defendant is obligated to pay a maximum total amount of $635,000, as well as a clarification of Defendant's policy regarding pay for computer boot up and login time. See Amended Settlement Agreement and Release and Exhibits filed in this action on February 21, 2019 ("Settlement"). ECF No. 22-3; Declaration of Jason T. Brown ("Brown Decl."), ECF No. 18-2, ¶¶ 4-10.

The relevant time periods (also known as the "Class Periods") for the Settlement Class is June 22, 2015-October 1, 2018 for purposes of the FLSA settlement and June 7, 2016-October 1,

2018 for the Nevada settlement. June 22, 2015 is three years prior to the effective date the Parties signed an agreement to toll the statute of limitations under the FLSA to give the Parties the opportunity to try and resolve the case prior to proceeding with litigation. June 7, 2016 is two years prior to the date Plaintiff filed the Complaint in this case. October 1, 2018 is the date on which the Parties agreed to cut off the effective date of the settlement.

On March 11, 2019, the Court preliminarily approved the parties' settlement, certified the proposed Settlement Class pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, and directed the parties to send out the class notice. ECF No. 23. In response to the notice, fifty-six (56) out of a potential sixty-two (62) Class Members filed Consent to Join forms, ECF Nos. 24-32, only 2 potential Class Members requested to be excluded, and no objections were submitted. See Exhibit 1, Declaration of Jennifer M. Keough regarding Settlement Administration ("Keough Decl.") ¶¶ 9-12.

## II.    SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

The Parties' Settlement provides for significant relief in the way of monetary recovery on behalf of the class and non-monetary relief in the form of clarification of Defendant's policy regarding pay for computer boot up and login time; it releases those claims alleged or related to the complaint; and it sets forth the legally appropriate mechanism for providing notice to the class of the terms and conditions of the Settlement.

### A.    The Monetary Recovery

The Settlement provides for a maximum settlement amount of $635,000 (the "Maximum Settlement Amount"). Settlement ¶ 5(a). The following approximate breakdown applies to payments from the Maximum Settlement Amount:

- $276,750 in a settlement fund for Plaintiffs' FLSA claims;
- $149,500 for settlement of Plaintiffs' Nevada state law claims;
- $10,000 incentive award to the Named Plaintiff Ebony Howard for her participation in the lawsuit;

- $25,000 total to Named Plaintiff Ebony Howard and Opt-ins Starla Wheeler, Jackson DeMario, and Janelle Clarkson-Dean and in exchange for general releases; and

- $173,750 in attorneys' fees and costs.

Id. ¶ 5. Payroll taxes will only be deducted from half of the amounts of the FLSA and Nevada state law funds, which are deemed to be wages, as opposed to penalties or interest. Id. ¶¶ 5(a)(1) and 5(a)(2). Settlement shares were apportioned based on the number of workweeks worked by each class member during the applicable FLSA and Nevada statutes of limitation. Id. These respective settlement shares are reflected in the redacted chart filed Exhibit 3 to the parties' Joint Motion for Preliminary Approval and were also disclosed to each Class Member on the Court-approved settlement notices that were sent. ECF No. 18-3.

For the FLSA fund, fifty-six (56) out of a potential sixty-two (62) Class Members claimed their shares by filing a Consent to Join form. ECF Nos. 24-32. The shares of the six (6) Class Member who did not file a Consent to Join form will remain in the possession of Defendant, and these Class Members will not release their FLSA claims. Settlement ¶ 5(a)(1)(b).

For the Nevada state law fund, settlement shares will be paid out to thirty-eight (38) Class Members. The shares of the two (2) Class Members who submitted requests for exclusion will remain in the possession of Defendant, and these Class Members will not release their wage-and-hour claims under Nevada law. Id. at ¶ 5(a)(2)(b).

In total, $426,250 in settlement shares were made available to the 62 potential members of the settlement classes. This exceeds the amount the Parties estimate these individuals would be owed based on the fifteen (15) minutes of pre-shift work alleged in the Complaint. In Class Counsel's opinion, this is an excellent result. Brown Decl. ¶ 15.

**B.    <u>The Non-Monetary Relief</u>**

In addition to the significant monetary recovery achieved on behalf of the Class, Plaintiff also prompted Defendant to engage in a thorough review of its practices regarding pay for computer boot up and log in time, which prompted clarification of these practices to assure such time is paid for going forward. While Defendant denies that any policy or practice was in any

way unlawful prior to this lawsuit, Plaintiff's Complaint prompted clarification of the policies which in turn benefits the class.

### C. The Release

Defendant continues to deny liability under any of Plaintiff's claims. The Settlement provides the definition of Released Claims under both the FLSA and Nevada state law in paragraph 7 and 8 of the Agreement. Upon final approval by the Court, each member of the FLSA class who has filed a timely Consent to Join forms fully and finally releases and discharges the "Releasees" as defined in paragraph 7 of the Agreement of all claims under the FLSA for the Relevant Time Period as defined in paragraph 2 of the Agreement.

In addition, upon final approval by the Court, each member of the Nevada Settlement Class who has not submitted a timely and valid Opt-Out or objection to the settlement, fully and finally releases and discharges the "Releasees" as defined in paragraph 8 of the Agreement of all claims under Nevada state law for the Relevant Time Period as defined in paragraph 2 of the Agreement.

### D. Settlement Administration and Notice

On March 11, 2019, the Court preliminarily approved the parties' settlement, certified the proposed Settlement Class pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, and directed the parties to send out the class notice. ECF No. 23. The Parties agreed to use a third-party Claims Administrator, JND Legal Administration ("JND"), to administer the claims process. Settlement ¶ 5(a)(4). Pursuant to the terms of the Agreement, on March 13, 2019, Defendant's Counsel provided JND with an electronic file containing the names, employer identification numbers, phone numbers, work email addresses, hire dates, termination dates, employment location, job titles, pay rates, and last-known mailing addresses for 62 Class Members. Keough Decl. ¶ 4.

On March 21, 2019, JND sent the Court-approved Settlement Class Notice via first-class regular U.S. mail to the 62 Class Members, and via email to the 46 Class Members for which an

email address was provided. Id. at ¶¶ 5, 7.[1] The Notice informed Class Members of their rights in the Settlement, the deadline for objecting and requesting exclusion to the Settlement, and how to participate in the settlement and receive their portion of the FLSA Fund and Nevada Fund. ECF No. 22-3. As of the date of this Declaration, JND has tracked one Notice from the original emailed Notices that was returned as undeliverable, and two Notices from the original first-class mailing that were returned as undeliverable without a forwarding address.[2]

### E. The Extremely Positive Response to the Settlement

The deadline for Class Members to submit a Consent to Join form, an objection to the Settlement, or a request for exclusion was a postmarked deadline of May 6, 2019. **Fifty-six (56)** out of the sixty-two (62) potentially-eligible Class Members completed Consent to Join forms, which were filed with the Court pursuant to 29 U.S.C. § 216(b), see ECF Nos. 24-32, resulting in an exceptionally high a participation rate of *over 90%*. JND received **two requests for exclusion** to the Settlement. Keough Decl. ¶¶ 9, 10. **No objections** have been submitted to JND or filed with the Court. Id. at 11, 12.

### III. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law strongly favors settlements, particularly where complex class action litigation is concerned. See Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Settlement of a class action, however, is subject to the court's approval. Fed. R. Civ. P. 23(e). Similarly, FLSA class action claims may be settled under the supervision of the Department of Labor or with court approval. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

---

[1] These 46 Class Members are the only ones for whom Defendant had email addresses in its records.

[2] Of the two Notices from the original first-class mailing that were returned as undeliverable, one was from a Class Member who had already submitted a consent form because Notice was delivered successfully via email, and JND re-mailed the Notice to the other Class Member based on updated address information from an advanced address research. Keough Decl. ¶¶ 6, 8.

Court approval of a class action settlement follows a three-step procedure: "(1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of mailed … or published notice of the settlement to all affected Class Members; and (3) a 'formal fairness hearing' or final settlement approval hearing, at which Class Members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented." Harris v. U.S. Physical Therapy, Inc., 2012 WL 3277278, at *3 (D. Nev. July 18, 2012), report and recommendation adopted, 2012 WL 3277276 (D. Nev. Aug. 9, 2012) (quoting Manual for Complex Litigation (Fourth) § 21.632 (2008)).

The first two steps of the class settlement approval process – preliminary approval and sending of notice – have been completed. The final step for the Court is now the final settlement hearing to determine the fairness, adequacy, and reasonableness of the settlement. Harris, 2012 WL 3277278, at *3. As detailed below, the settlement was fair, adequate, and reasonable and achieved the best result possible for the Class. Accordingly, the Court should enter an order of final approval of the settlement.

**A.    The Settlement Was the Result of Non-Collusive, Arm's-Length, Informed Negotiations**

The terms and conditions set forth in the Settlement Agreement reflect a reasonable compromise, negotiated at arm's length between skilled and experienced counsel, in a context where all parties faced significant litigation risks with respect to hotly contested factual and legal issues. The Parties held a mediation session on October 26, 2018 in Las Vegas, Nevada with Mediator Scott S. Markus, Esq. of Agreement.com Commercial Mediation. Prior to the mediation, Defendant provided payroll records for all of its dispatchers during the relevant time period, as well as a sampling of records of certain dispatchers' badge swipes and telephone records. Brown, LLC thoroughly analyzed this information and discussed it with Plaintiff and the Opt-ins, and as a result was able to make an informed estimate about the potential damages owed to the collective and class. Brown Decl. ¶ 5. The Parties reached their settlement in principal one week after the mediation, on November 1, 2018, after engaging in extended negotiations and

discussions.

Accordingly, the process by which the parties reached the settlement weighs in favor of final approval. See Thio v. Genji, LLC, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) (settlement reached with assistance of experienced class action mediator after review of payroll data weighed in favor of preliminary approval); Villegas v. J.P. Morgan Chase & Co., 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement reached with assistance of experienced mediator after review of data demonstrates lack of collusion).

### B.     The Proposed Settlement Has No Obvious Deficiencies

The settlement has no obvious deficiencies or signs of collusion. Rather, Defendant has agreed to pay $635,000.00, a substantial sum of money, in settlement of the claims asserted. No particular group of Class Members is left out or treated unfavorably. No new claims are being added to the settlement after it was negotiated.

For the Nevada state law fund, subject to final approval, settlement shares will be paid to all class members except for the two who filed requests for exclusion. Each of these participating class members fully and finally releases and discharges the "Releasees" as defined in paragraph 8 of the Agreement of all claims under Nevada state law for the Relevant Time Period as defined in paragraph 2 of the Agreement.

For the FLSA fund, settlement shares will be paid to the fifty-six (56) members of the FLSA Class who completed Consent to Join forms, out of sixty-two (62) potentially eligible Class Members. Only six (6) potential Class Members did not complete a Consent to Join form. Pursuant to the Settlement and 20 U.S.C. § 216(b), these six (6) individuals will not release their FLSA claims and their shares of the FLSA fund will remain in Defendant's possession.

Accordingly, there are no obvious deficiencies precluding preliminary approval of the settlement. See Tijero v. Aaron Bros., Inc., 301 F.R.D. 314, 324-25 (N.D. Cal. 2013) (finding no obvious deficiencies where "the settlement confers tangible monetary benefits to the class— namely, a gross settlement amount of $800,000[,] [t]here is no indication that the proposed settlement improperly grants preferential treatment to class representatives or segments of the class[, and] [t]he methodology agreed to by the parties for allocating the Net Settlement Fund

appears fair and reasonable."); Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 302 (E.D. Cal. 2011) (finding no obvious deficiencies where settlement provides for $150,000 payment, entire settlement payment is distributed to Class Members who make timely claims, and settlement payments to be determined based on number of weeks worked by each class member); Thio, 14 F. Supp. 3d at 1334 (settlement had no obvious deficiencies where the scope of the release, while broad, "is acceptable because the claims released are limited to those based upon the facts set forth in the First Amended Complaint"); Custom LED, LLC v. eBay, Inc., 2013 WL 6114379, at *4, *7 (N.D. Cal. Nov. 20, 2013) (scope of release in class action settlement was not improperly broad where it released all claims, "known or unknown," "arising out of or relating in any way to any of the legal, factual, or other allegations made in the Action, or any legal theories that could have been raised based on the allegations of the Action").

**C.    The Proposed Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class**

The relief provided in the settlement will benefit all Class Members equally. The settlement does not improperly grant preferential treatment to the Named Plaintiffs or any other segments of the Class. Each Settlement Class Member, including the Named Plaintiffs, who have worked hours as an hourly-paid dispatcher during the applicable period are entitled to payment based on the plan of allocation. Each Participating Settlement Class Member's lump sum payment will be determined through the application of a formula, which will ensure that the settlement proceeds are distributed to the Class Members on a pro rata basis, based on the number of workweeks during the applicable class period in which they worked. Accordingly, the settlement does not unfairly give preferential treatment to any segments of the class. See Tijero, 301 F.R.D. at 324-25 (preliminary approval to settlement granted where, among other things, "[t]here is no indication that the proposed settlement improperly grants preferential treatment to class representatives or segments of the class[, and] [t]he methodology agreed to by the parties for allocating the Net Settlement Fund appears fair and reasonable").

### D. The Proposed Settlement Falls Well Within the Range of Possible Approval

"To determine whether a settlement 'falls within the range of possible approval' a court must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" Bellinghausen v. Tractor Supply Co., 303 F.R.D. 611, 623 (N.D. Cal. 2014) (citing and quoting In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). A settlement falls within the reasonable range of approval even where it does not realize the maximum recovery for the Plaintiffs. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (citing and quoting Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998)).

In determining whether a settlement falls within the reasonable range of approval, the risks of proceeding with the litigation rather than settling is always taken into account. See, e.g., Tijero, 301 F.R.D. at 324 (preliminarily approving settlement agreement in wage and hour action, explaining that "based on its experience with similar actions, the Court finds that the settlement amount of $800,000 preliminarily appears to be fair, reasonable, and adequate in light of the 'maximum damage exposure' calculated by Plaintiffs and the risks and costs attendant with further litigation"). Under the facts of this case, the settlement falls well within the range of possible approval, particularly when taking the substantial risks of continuing with this litigation into account.

At $635,000 overall, the proposed monetary recovery portion of the settlement is clearly substantial. Of this amount, $426,250 was made available to the 62 potential members of the settlement classes, which exceeds the amount the parties estimate these individuals would be owed based on the fifteen (15) minutes of pre-shift work alleged in the Complaint. Brown Decl. ¶ 15. The Class Members' benefits are determined by a precise accounting of the weeks they worked during the Relevant Time Periods in relation to the total number of weeks worked by all Class Members during that same periods.

Furthermore, the non-monetary relief portion of the settlement is invaluable. From Plaintiff's perspective, the clarification of Defendant's policy regarding pay for computer boot

up and login time puts to rest any perceived ambiguity that an employee will not get paid for this time. The value of this non-monetary relief cannot be understated. While the question of whether Defendant's existing policy required employees to be on the clock when booting up and logging into the computer remains in dispute, the clarification of such a policy will definitively put the issue to rest prospectively.

The conclusion that the Settlement is reasonable is reinforced by considering such factors as the risk that a class might not be certified or might be significantly smaller than proposed; and the time, expense, and complexity of the litigation, including the possibility of appellate proceedings. The parties disagreed on many issues that would affect the collective members' ability to recover against Defendant including, inter alia, whether the collective members performed "off-the-clock" work during preliminary "boot-up" time; whether the collective members worked over 40 hours a week; whether the alleged off-the-clock work is compensable under the FLSA; whether the alleged off-the-clock work falls within overtime or gap time in each week; and whether Defendant is excused from the overtime requirements of the FLSA under the de minimis doctrine.

Furthermore, while Class Counsel believes that Plaintiff's claims are meritorious, they are experienced class action litigators, and understand that the outcome of class certification, trial, and any attendant appeals were inherently uncertain, as well as likely to consume many more months, even years. Brown Decl. ¶¶ 21-28. Having reviewed relevant compensation data and employment information, counsel for the parties—all experienced class action litigators well versed in wage and hour law—arrived at a reasonable resolution through a protracted and arm's-length direct negotiation process, which continued into all details of the settlement agreement and ancillary documents. Brown Decl. ¶¶ 4-12.

While the potential recovery if Plaintiffs had prevailed could have been larger than the proposed settlement amount, based on the inherent uncertainty of a jury trial, the uncertainty of collective action decertification, proposed class certification, and other obstacles to establishing liability on Plaintiffs' claims, the proposed settlement is well within the range of approval and should be finally approved. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998)

(reviewing court should defer to "the private consensual decision of the parties" familiar with the case regarding appropriateness of settlement); Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982) (fairness hearing should not be turned into a "rehearsal for trial on the merits" but should assess whether settlement taken as a whole is fair, reasonable, and adequate); Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 5 Moore's Federal Practice, § 23.85[2][b] (Matthew Bender 3d ed. 1997)) ("proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class").

### E.  The City of Seattle Factors Support Final Approval

In addition, when determining whether a class settlement ultimately is fair – at the final settlement approval hearing – courts examine the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement. See City of Seattle, 955 F.2d at 1291; Hanlon, 150 F.3d at 1026

1. The Parties Dispute the Strength Of Plaintiffs' Claims and Whether the Claims Can Be Certified Under 29 U.S.C. § 216(b) and Rule 23.

As discussed above, Plaintiffs believe that their claims are strong and that they would succeed both in establishing class or collective treatment of these claims and on the merits of these claims. Nevertheless, there is a real risk that Plaintiffs could fail to obtain class or collective treatment of this case and that Plaintiffs would not prevail on the merits. Defendants for example, would contest similarly situated and predominance standards under the FLSA and Rule 23, as well as state law companion class action rules. This is an off-the-clock case. Thus, at the heart of Defendant's argument would be the fact that each class member worked different shifts, at different locations, under different managers, and were given different instructions. Whether a common policy and common evidence would prevail is "up in the air" at best.

If the Court declined to certify the class, then most absent Class Members would lose their best opportunity to recover from Defendant. Opt-in Plaintiffs would have to continue to participate in the litigation and go to trial. Settlement, on the other hand, eliminates any risk that Plaintiffs would face decertification of the collective action, not successfully obtain certification of various state-based classes, and maintain collective action and class certification through trial. In light of these risks, the proposed settlement is advantageous for the Class and should be finally approved.

### 2. Further Litigation Will Be Extensive and Complex and Cause the Parties to Incur Significant Risk and Expense.

Unless the settlement is approved, it is likely the parties will continue to vigorously litigate the case, which – despite its years and the significant investment of time by counsel on both sides – is only at the outset of discovery. See Hester v. Vision Airlines, Inc., 2014 WL 1366550, at *4 (D. Nev. Apr. 7, 2014). (years of litigation and an appeal, among other things, suggested parties would continue to litigate for years absent settlement). Litigation of the parties' claims could involve dozens of depositions throughout numerous states, briefing collective and class certification, briefing dispositive motions, and preparing for and conducting trial. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009) ("serious hurdles" remaining such as defendant's anticipated motion for summary judgment and appeals that would prolong litigation and recovery by Class Members, favored settlement). In light of the substantial additional expense the parties will incur if litigation proceeds, final approval of the settlement is warranted

### 3. The Amount Offered in Settlement Will Fairly and Adequately Compensate Class Members

In total, $426,250 in settlement shares will be made available to the 62 potential members of the settlement classes. This exceeds the amount the Parties estimate these individuals would be owed based on the fifteen (15) minutes of pre-shift work alleged in the Complaint. Accordingly, the amount offered in the settlement, as well as its proposed allocation, weighs strongly in favor of final approval.

### 4. Plaintiffs Have Conducted Sufficient Discovery and Investigation to Assess Settlement

Prior to the mediation, Defendant provided payroll records for all of its dispatchers during the relevant time period, as well as a sampling of records of certain dispatchers' badge swipes and telephone records. Brown, LLC thoroughly analyzed this information and discussed it with Plaintiff and the Opt-ins, and as a result was able to make an informed estimate about the potential damages owed to the collective and class. Brown Decl. ¶ 5. Thus, Plaintiffs and Class Counsel "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." Hester, 2014 WL 1366550, at *5.

### 5. In Light of Their Experience and Knowledge of the Case, Class Counsel Believes the Settlement is Reasonable, Fair, and Adequate

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," Nat'l Rural Telecommunications Coop., 221 F.R.D. at 528 (C.D. Cal. 2004) (citations and internal quotations omitted), and here Class Counsel believes the settlement is fair, reasonable, and adequate in light of the circumstances of the case. Class Counsel are experienced wage and hour class action litigators. Brown Decl. ¶¶ 21-28. While Class Counsel believe that Plaintiffs' claims are meritorious, they understand the outcome of decertification, state-based class certification, dispositive motions, trial, and potential additional appeals are inherently uncertain. Moreover, if this litigation continues, it may be years before Class Members receive any recovery. This settlement will allow Class Members to promptly recover money to compensate them for any uncompensated off-the-clock work they performed. Class Counsel believe this is an excellent result given the risks and delays in pressing forward. See Brown Decl. ¶ 15; Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 967 (9th Cir. 2009) ("[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation") (citations and internal quotations omitted).

      6.      <u>Class Members Informed of the Settlement Have Reacted Positively</u>

Class Members informed of the settlement have overwhelmingly reacted positively to the proposed settlement. After preliminary approval, notice was sent to sixty-two (62) identified Class Members, and **fifty-six (56)** of them completed Consent to Join forms, resulting in an exceptionally high a participation rate of *over 90%*. ECF Nos. 24-32. Only 2 of the 62 Class Members sought to be excluded from the class and not a single one of the 62 Class Members submitted an objection. Keough Decl. ¶¶ 9-12. In light of the positive reaction to the settlement, final approval should be granted.

**IV.    THE COURT SHOULD APPROVE THE SERVICE AWARD AND GENERAL RELEASE/SEPARATION PAYMENTS**

The Court should approve the $10,000 service award to named Plaintiff Ebony Howard, who provided invaluable assistance to Plaintiff's counsel in explaining Defendant's compensation policies and procedures and in providing information to assist in the settlement negotiations. Further, Ms. Howard incurred personal risk in bringing this lawsuit on behalf of the other persons in the class. <u>See, e.g.</u>, <u>Koehl v. Verio</u>, 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where defendant prevailed at trial, named plaintiffs were held liable, jointly and severally, for defendant's attorneys' fees). Plaintiff could have been held liable for Defendant's costs if it were ultimately unsuccessful in resolving the case and their potential employment opportunities could (and can still be) impacted because of her public participation in this lawsuit. Brown Decl. ¶ 19.

Such service payments are recognized as serving an important function in promoting class action settlements. In <u>League of Martin v. City of Milwaukee</u>, 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. <u>Id.</u> at 1024; <u>see also</u> <u>Rausch v. Hartford Fin. Serv. Grp</u>., No. 01-CV-1529-BR, 2007 U.S. Dist. LEXIS 14740, 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive fee award). Accordingly, the service award in this case should be approved.

In addition to the service award for Plaintiff Howard, the Agreement provides for a total of $25,000 to named Plaintiff Ebony Howard and opt-in Plaintiffs Starla Wheeler, Jackson DeMario and Janelle Clarkson-Dean.[3] These payments are supported by independent consideration as the Named Plaintiff and each of these Opt-Ins, under the guidance of Plaintiffs' counsel, signed respective General Release Agreements attached as Exhibit B to the Settlement Agreement. Brown Decl. ¶ 20. These payments should also be approved. See Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1179 (S.D. Cal. 2016) (approving FLSA collective settlement in which named plaintiff agreed to general release in exchange for separate payment).

## V. THE COURT SHOULD APPROVE THE PAYMENT OF ATTORNEYS' FEES AND COSTS

The Settlement provides that subject to court approval, the Defendant will pay up to $173,750 of the Settlement Fund to Class Counsel for reasonable fees and costs. Settlement ¶ 5(a)(6). This figure represents 25% of Maximum Settlement Amount for fees, plus up to $15,000 to reimburse litigation expenses Plaintiff's counsel has incurred to date and any additional expenses Plaintiff's counsel may incur (such as travel for the final fairness hearing). The Settlement provides that "If requested by the Court, Plaintiffs will file a motion to the Court for approval of the Fees and Costs Fund, which Defendant will not oppose." Id. ¶ 5(a)(6)(b). The Court has not directed Plaintiffs to file a motion for approval of the Fees and Costs Fund.

In any event, the Court should approve the payment of fees and costs because it provides fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Further, the requests are less than other attorneys' fees awards for wage and hour class actions, particularly where a significant portion of the Class Members will be receiving substantial claim payment amounts of several thousand dollars.

Indeed, courts have recognized that an appropriate method for awarding attorneys' fees in a class action is to award a percentage of the "common fund" created as a result of the

---

[3] Named Plaintiff Howard and Opt-in Plaintiffs Wheeler and Jackson will each receive $5,000, and Opt-in Plaintiff Clarkson-Dean, who agreed to mutually separate her employment, will receive $10,000.

settlement. Vincent v. Hughes Air West, Inc., 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." Id.

Moreover, several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in In re Activision Securities Litigation, 723 F.Supp. 1373, 1375 (N.D. Cal. 1989):

> This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the Lindy Kerr-Johnson analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. In re Activision Securities Litigation, 723 F. Supp. at 1378-79. Courts now routinely use the percentage of the common fund approach to determine the award of attorneys' fees. (See, e.g., In re Pacific Enterprises Securities Litigation, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

Class Counsels' application for 25% of the Settlement Funds for fees is within the range of reasonableness. Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case. Newberg on Class Action § 14:6 (4th ed. 2008); see also In re Activision Securities Litigation, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989). According to Newberg: "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger

percentages are not unprecedented." Newberg, § 14:6.[4] Further, although Defendant denies any liability, considering the benefit to the class moving forward of the Defendant clarifying the application of its wage and hour laws and ensuring compliance, the relief to the prospective class may be much greater than the remedial economic relief achieved. If the prospective relief were quantified, the percentage of the fee in contrast to the benefit to the class would be much less than 25%.

Accordingly, the payment of attorneys' fees and costs in the Settlement should be approved.

///

///

///

///

///

///

---

[4]    See also, In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 460 (9th Cir.2000) (affirming award of fees equal to one-third of total recovery); In re Public Ser. Co. of New Mexico, 1992 WL 278452, at *1, *12 (S.D.Cal. July 28, 1992) (awarding one-third); Antonopulos v. North American Thoroughbreds, Inc., 1991 WL 427893, at *1, *4 (S.D.Cal. May 6, 1991) (awarding one-third); In re M.D.C. Holdings Sec. Litig., 1990 WL 454747, at *1, *10 (S.D.Cal. Aug.30, 1990) (awarding 30% attorneys' fee plus expenses).Moreover, courts in other districts have awarded attorney fees in amounts greater than 25% of the common fund. See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 300 (1st Cir.1995) (approving a fee of roughly 30.9%); Nichols v. SmithKline Beecham Corp., 2005 WL 950616, at *1, *24 (E.D.Pa. April 22, 2005) (awarding fee equal to 30% of a $65 million fund which represented a multiplier of 3.15 of the loadstar); In re Raviscent Tech. Inc. Sec. Litig., 2005 WL 906361, at *1, *12 (E.D.Pa. April 18, 2005) (acknowledging that attorneys' fees of 30–35% were commonly granted in awarding 30% in fees of a $7 million fund); In re Corel Corp. Sec. Litig., 293 F.Supp.2d 484, 495–99) (E.D.Pa.2003) (awarding one-third of $7 million settlement fund plus expenses); In re Combustion, Inc., 968 F.Supp. 1116, 1136–1141 (W.D.La.1997) (awarding fee equal to 36% of the settlement fund); In re Gulf Oil/Cities Serv. Tender Offer Litig., 142 F.R.D. 588, 597 (S.D.N.Y.1992) (awarding fee of 30%). In re Heritage Bond Litig., No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005)

## IV. CONCLUSION.

Based on the information and reasons provided above, the Parties respectfully request that the Court enter the proposed order granting final approval of the parties' Settlement Agreement.

DATED: May 28, 2019                    **WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**

*/s/ Don Springmeyer*
Don Springmeyer
Bradley S. Schrager

*Attorneys for Plaintiff*

DATED: May 28, 2019                    **JACKSON LEWIS P.C.**

*/s/ Deverie Christensen*
Deverie Christensen
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of May, 2019, a true and correct copy of **JOINT MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

By */s/ Christie Rehfeld*
Christie Rehfeld, an Employee of
WOLF, RIFKIN, SHAPIRO, SCHULMAN &
RABKIN, LLP